UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


WILLIE ANDRE WARD,

                    Petitioner,

v.                                    Case No. 3:03-cv-920-J-32HTS

JAMES CROSBY, etc.;
et al.,

                    Respondents.

_____

## ORDER[1]

### I. Status

    Petitioner Willie Andre Ward, an inmate of the Florida penal
system proceeding *pro se* and *in forma pauperis*, initiated this
action by filing a Petition for Writ of Habeas Corpus (Doc. #1)
pursuant to 28 U.S.C. § 2254 on October 10, 2003.  On December 3,
2003, Petitioner filed an Amended Petition[2] (Doc. #10), in which he
challenges a 2000 state court (Duval County, Florida) judgment of
conviction for burglary of a dwelling on the following grounds: (1)
ineffective assistance of trial counsel for failure to properly
convey a plea offer; (2) ineffective assistance of trial counsel

_____

    [1] Under the E-Government Act of 2002, this is a written
opinion and therefore is available electronically.  However, it has
been entered only to decide the motion or matter addressed herein
and is not intended for official publication or to serve as
precedent.

    [2] Petitioner has also submitted a Memorandum of Law (Doc. #5).

for eliciting incriminating evidence against Petitioner; (3) denial of due process when the trial court allowed Petitioner to be fingerprinted just prior to the trial; and, (4) ineffective assistance of trial counsel for failure to move to dismiss the charge when Petitioner was in jail for 296 days.

Respondents filed an Answer in Response to Order to Show Cause (Doc. #14) (hereinafter Response). They submitted exhibits in support of their Response.[3] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. See Court's Order to Show Cause and Notice to Petitioner (Doc. #11). Petitioner has properly responded to Respondents' Response. See Petitioner's Opposition to the Respondents' Answer to Petition for Writ of Habeas Corpus (Doc. #17) (hereinafter Petitioner's Opposition). This case is now ripe for review.

## II. Procedural History

On April 13, 2000, after a jury trial, Petitioner was convicted of burglary of a dwelling. Ex. A, Transcript of the Jury Trial (hereinafter Tr.) at 253. On April 27, 2000, Petitioner was sentenced as a habitual felony offender and Prison Releasee Re-Offender to twenty-five (25) years of incarceration, with a minimum mandatory of fifteen (15) years. Ex. B at 149-54. Petitioner challenged his conviction, which was affirmed by the appellate

---

[3] Respondents' exhibits will be hereinafter referred to as "Ex."

court on June 12, 2001; however, Petitioner's sentence as a Prison Releasee Re-Offender was reversed. <u>Ward v. State</u>, 790 So.2d 488 (Fla. 1st DCA 2001); Ex. C. Petitioner was resentenced on December 17, 2001, to twenty-five years as a habitual felony offender. Ex. D at 74-78; <u>see</u> http://www.dc.state.fl.us/activeinmates (Florida Department of Corrections website).

On March 30, 2001, Petitioner filed a motion to define or clarify his sentence. Ex. D at 1-3. On December 21, 2001, Petitioner filed a motion to reduce or modify sentence. <u>Id</u>. at 4-5. And, on March 14, 2002, he filed a motion for post conviction relief. <u>Id</u>. at 6-20. Petitioner filed another motion for post conviction relief on November 22, 2002. <u>Id</u>. at 21-54. Finally, he filed a motion for correction of sentence on January 21, 2003. <u>Id</u>. at 55-58. On February 19, 2003, the trial court denied all of Petitioner's motions without an evidentiary hearing. <u>Id</u>. at 59-154. On September 12, 2003, the appellate court affirmed the rulings except the order denying as untimely the motion to reduce or modify sentence. <u>Ward v. State</u>, 854 So.2d 260 (Fla. 1st DCA 2003). The appellate court remanded the case for the trial court to reconsider his motion to reduce or modify sentence. <u>Id</u>. Petitioner moved for review in the Supreme Court of Florida; however, the petition was dismissed on December 31, 2003. <u>Ward v. State</u>, 865 So.2d 482 (Fla. 2003). After remand, the trial court

denied Petitioner's motion to clarify sentence on October 28, 2003. Ex. F.

Petitioner's Petition (dated October 8, 2003) and filed in this Court on October 10, 2003, is timely filed within the one-year period of limitation. See 28 U.S.C. § 2244(d); Response at 6-7.

### III. EVIDENTIARY HEARING

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing. A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief. Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir.

2003), <u>cert</u>. <u>denied</u>, 541 U.S. 1034 (2004).  Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

## IV.   STANDARD OF REVIEW

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. <u>Nelson v. Alabama</u>, 292 F.3d 1291, 1294-95 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 926 (2003); <u>Fugate v. Head</u>, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998), <u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners.  Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996.  AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a

5

deferential standard for reviewing state court judgments in these cases.  <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000).  Subsection (d) of § 2254 provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

AEDPA also makes clear that substantial deference is to be accorded a state court's findings of fact.  Section 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

<u>Henderson v. Campbell</u>, 353 F.3d 880, 889-891 (11th Cir. 2003) (footnote omitted), <u>cert</u>. <u>denied</u>, 125 S.Ct. 44 (2004).

Clearly, the new 28 U.S.C. § 2254(d) creates a more deferential standard for federal court review of state court

adjudications:   "[u]nless a state court decision is directly contrary to Supreme Court case law, we review state court findings of fact and conclusions of law for reasonableness." Van Poyck v. Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003); Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that the Ohio Court of Appeals' decision was not "contrary to" or an "unreasonable application" of clearly established federal law and stressing "the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519).  A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams,

529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).

. . . .

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. Id. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in Williams that an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). The Court further noted that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Id. (quoting Williams, 529 U.S. at 411, 120 S.Ct. at 1522 (O'Connor, J., concurring)).

Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

In applying the "contrary to" prong of AEDPA, we have recognized that where no Supreme Court precedent is on point, "we cannot say that the state court's conclusion . . . is contrary to clearly established Federal law as determined by the U.S. Supreme Court." McIntyre v. Williams, 216 F.3d 1254, 1258 (11th Cir. 2000).

8

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence. See id. at § 2254(e)(1). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel.  That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted).  If counsel's performance falls "below the line of reasonable practice, there is a further question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Establishing these two elements is not easy:  "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).

10

For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.

The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take. See Chandler, 218 F.3d at 1315. . . .

A petitioner's burden of establishing that his lawyer's deficient performance prejudiced his case is also high. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test." Strickland, 104 S.Ct. at 2067. Instead, a petitioner must establish that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given adequate assistance. See id. at 2068.[4]

Van Poyck, 290 F.3d at 1322-23 (footnotes omitted).

---

[4] However, "when a defendant raises the unusual claim that trial counsel, while efficacious in raising an issue, nonetheless failed to preserve it for appeal, the appropriate prejudice inquiry asks whether there is a reasonable likelihood of a more favorable outcome on appeal had the claim been preserved." Davis v. Sec'y for the Dep't of Corr., 341 F.3d 1310, 1316 (11th Cir. 2003) (per curiam) (citation omitted).

In sum, "[w]ithout proof of both deficient performance and prejudice to the defense, . . . it could not be said that the sentence or conviction 'resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable,' and the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S. 685, 695 (2002) (internal citation omitted) (quoting <u>Strickland</u>, 466 U.S. at 687).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Petitioner Ward claims that his counsel was ineffective for failure to properly convey the State's five-year plea offer. Petition at 5.   Specifically, he alleges that counsel told him about the State's five-year plea offer, but advised him to reject the plea offer and failed to inform him of the penalties he was facing.

The following facts are relevant to Petitioner's claim.   On July 7, 1999, Petitioner was arrested for burglary of a dwelling. Ex. B at 1-2.   On July 8, 1999, the court appointed the Office of the Public Defender for the Fourth Judicial Circuit of Florida to represent Petitioner Ward.   <u>Id</u>. at 6-7.   The record reflects that David A. Taylor and LaFonda Harris, Assistant Public Defenders, were Petitioner's first attorneys.   Amended Petition at 13; Ex. B at 18-19, 20-21, 36.   On October 20, 1999, Petitioner filed a *pro se* Motion to Dismiss Counsel, stating that he and Mr. Taylor had a

conflict of interest, that he is innocent of the crime and that he was wrongly accused. Id. at 24-27. On October 20, 1999, the court granted the motion. On October 22, 1999, the court permitted the Office of the Public Defender to withdraw as Petitioner's attorney, and the court appointed a private attorney: James W. Hardee, Esquire. Id. at 35.

On January 13, 2000, in a *pro se* letter to the trial judge, Petitioner Ward stated that his attorney did not want to represent him due to the meritless *pro se* motions Petitioner had filed. Id. at 64. On February 10, 2000, Mr. Hardee filed a Certificate of Conflict and Motion to Withdraw, stating that "[t]he Defendant still insists on having his *pro se* motions heard by this Court, despite several attempts by the undersigned to explain to him the reasons that[,] in the undersigned's opinion[,] they were without legal merit" and therefore "[c]ertain irreconcilable differences have arisen between the Defendant and the undersigned counsel, which constitute an actual conflict." Id. at 76. On February 10, 2000, the court granted the Certificate of Conflict and Motion to Withdraw. Id. at 78. On February 15, 2000, the court permitted James W. Hardee to withdraw and appointed Grayling E. Brannon to represent Petitioner Willie Andre Ward. Id. at 79.

In support of ground one, Petitioner states that Mr. Taylor informed him about the State's five-year plea offer, but advised Petitioner that he should not accept the plea offer because he

"could obtain a lower sentence."  Memorandum of Law (Doc. #5) at 8.

Petitioner claims that Mr. Hardee told him "the same thing" and

then withdrew.  <u>Id</u>.  Petitioner claims that his "last counsel" Mr.

Brannon "did the same thing too."  <u>Id</u>.  Petitioner notes that

"[e]ach counsel never informed [him] of the penalties" that he

could receive.  <u>Id</u>. at 8-9.  He concludes that, if they had

informed him of "the desirability of accepting the 5 year deal," he

would have accepted the five-year plea offer.  <u>Id</u>. at 9.  He states

that Mr. Brannon "mislead" him to a jury trial, where he received

a twenty-five year sentence.  <u>Id</u>.

In Petitioner's first Rule 3.850 motion, Petitioner raised a

similar claim (as ground two) that counsel was ineffective for

failure to properly convey the State's fifteen-year plea offer.

Ex. D at 14A.  In his second Rule 3.850 motion (as ground one),

Petitioner raised the claim now before this Court:  at the

arraignment, counsel informed Petitioner of the State's five-year

plea offer, but advised Petitioner that he should not accept the

plea offer.  <u>Id</u>. at 24.  The trial court addressed the issue on the

merits, stating:

> In ground one, Defendant asserts that
> counsel rendered ineffective assistance by
> advising Defendant not to accept a plea offer
> from the State for a term of years.  The
> rejection of a plea offer and proceeding to
> trial is a strategic decision and cannot serve
> as the basis for a claim of ineffectiveness of
> counsel.  <u>Gonzalez v. State</u>, 691 So.2d 602
> (Fla. 4th DCA 1997).  Defendant must assume
> the risks associated with proceeding to trial

14

> after rejecting a plea offer.  Additionally,
> as the Court stated in <u>Stone v. State</u>, 705
> So.2d 976, 977 (Fla. 3d DCA 1998), "[a]
> defendant is accountable for the common sense
> fact that there may be consequences in
> proceeding to trial."  In this case, Defendant
> knew of the *alleged* twenty (20) year offer[5].
> Defendant chose to reject this alleged plea
> offer and gamble by going to trial.  He is now
> solely accountable for the consequences of
> that gamble.  Accordingly, this Court finds
> that Defendant has failed to establish error
> by counsel or prejudice to his case.

<u>Id</u>. at 60-61.

This is not a scenario in which counsel did not convey the State's plea offer.  Petitioner acknowledges that Mr. Taylor (his first attorney) informed him of the State's five-year plea offer at the arraignment, but advised him to reject the plea.  Additionally, Petitioner states that all three of his attorneys (Mr. Taylor, Mr. Hardee and Mr. Brannon) did "the same thing."  Memorandum at 8.  It appears that Petitioner is claiming that counsel were ineffective because they did not encourage him to accept the alleged plea offer.  Petitioner concludes that he would have accepted the plea offer if counsel had advised him of the maximum sentence he faced.

---

[5] The trial court's ruling refers to a twenty-year plea offer, which is not what Petitioner claimed in his second Rule 3.850 motion (ground one).  As noted by Respondents in addressing the claim now before this Court, Petitioner first claimed that the State offered a fifteen-year plea (first Rule 3.850 motion, ground two) and then later claimed the State offered a five-year plea (second Rule 3.850 motion, ground one).  However, Petitioner never mentioned a twenty-year plea offer by the State.

The record before this Court reflects the following facts.  On August 11, 1999, the State filed a Notice of Intent to Classify Defendant as a Habitual Felony Offender.  Ex. B at 11.  The Notice regarding classification of Petitioner as a habitual felony offender clearly states that the State would seek to have Petitioner sentenced to sixty (60) years of imprisonment.  Id. Further, the Notice's certificate of service reflects that both Petitioner Ward and his attorney were furnished copies "by hand" on August 11, 1999.  Id.  Petitioner later acknowledged on January 21, 2000, in a *pro se* Motion to Dismiss Charges filed in the trial court, that the prosecutor had provided him a copy of the Notice of Intent to Classify Defendant as a Habitual Felony Offender, but he argued that he should not be considered a habitual offender.  Id. at 70, 74.   Petitioner also orally argued during his sentencing hearing that he was not a habitual offender.  Id. at 277-82.

Also, on September 22, 1999, the State filed a Notice of Intent to Classify Defendant as a Prison Release Re-Offender, stating that the State would seek to have Petitioner sentenced to fifteen (15) years imprisonment under the statute.  Id. at 17.  The Notice's certificate of service reflects that both Petitioner Ward and his attorney were furnished copies "by hand" on September 22, 1999.  Id.   Finally, in Petitioner's Opposition (Doc. #17) to Respondents' Response now before this Court, Petitioner again

16

acknowledges that he was provided copies of the Notices. Petitioner's Opposition at 2.

While Petitioner argued in state court that he is illiterate and that his attorney never read the Notice of Intent to Classify Defendant as a Habitual Felony Offender to him (Ex. D at 14A), it is clear that Petitioner is not illiterate.[6] Before trial, Petitioner filed numerous *pro se* motions, including several motions proclaiming his innocence and requesting that the charges be dismissed. Ex. B at 24-27, 36-39, 41-44, 46-49, 51-56, 58-59, 69-74. In the handwritten motions, Petitioner argued the rules of procedures and points of law, including a request for dismissal based on Florida's speedy trial rule. Id. at 61-63, 69-74. Petitioner even argued the speedy trial issue in open court on March 30, 2000. Id. at 245-46.

Thus, based on the record before this Court, it is clear that Petitioner understood the notice of habitualization and its effect on his sentence. Any claims of illiteracy or ignorance of the potential penalties that he faced are rebutted by the record.

There is a strong presumption that counsels' performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment. Chandler, 218 F.3d

---

[6] At the trial, Petitioner expressed an interest in making the opening statement to the jury and told the trial judge that he had finished high school, had trained himself in the law over the years and was therefore qualified to do so. Tr. at 98-100.

at 1314.   As noted by Petitioner, he had three attorneys
(throughout the proceedings from July 7, 1999, until his trial date
in April of 2000) who allegedly erred in a similar fashion.  Here,
Petitioner has failed to establish that no objectively competent
lawyer would have taken the action that his lawyers did take.  Id.
at 1315.

Even assuming that counsel failed to properly advise
Petitioner of the State's alleged plea offer by not informing him
of the maximum penalties he faced, Petitioner has not shown
prejudice.  Petitioner has not shown any evidence that, prior to
his conviction, he had expressed any desire to plead guilty.
Petitioner, as reflected in his numerous *pro se* pleadings
throughout the proceedings, proclaimed his innocence and argued
repeatedly that the charges should be dismissed because the
evidence was weak and because he had been falsely accused.
Petitioner has not demonstrated a reasonable probability that, but
for counsels' error, the result of the proceeding would have been
different (that he would have accepted a plea offer).  See Diaz v.
United States, 930 F.2d 832, 835 (11th Cir. 1991).   At the
beginning of the trial when Petitioner expressed an interest in
making the opening statement to the jury, he again pointed out to
the court that the State had "no evidence" against him.  Tr. at 95.
Even after the trial, Petitioner proclaimed his innocence at the
sentencing hearing.  Ex. B at 282.

## B. Ground Two

Petitioner claims counsel was ineffective for eliciting incriminating evidence against Petitioner during the cross-examination of Detective Hills.  Petition at 6; Memorandum at 17-19.  Petitioner raised this claim in his second Rule 3.850 motion (as ground two).  The trial court adjudicated the claim on the merits, and the appellate court affirmed.  The trial court, in denying the claim, identified the two-pronged test established in Strickland and stated, in pertinent part:

> In ground two, Defendant asserts that counsel rendered ineffective assistance by eliciting incriminating evidence, i.e. alleged blood found at the crime scene, during the trial.  Upon review of the trial transcripts, this Court finds that counsel did not elicit incriminating testimony regarding a cut on Defendant.  This Court notes that the police report, written by Detective Hills, did not indicate that Defendant was injured in any way prior to his arrest.  (Exhibit "D.") Additionally, this Court notes that during deposition, Detective Hills indicated that Defendant was not injured upon his arrest. (Defendant's Motion.)  Therefore, based upon the prior information that counsel had, it was not unreasonable for counsel to expect Detective Hills to testify that Defendant was not injured during his arrest.  Further, this Court notes that counsel impeached Detective Hills regarding Defendant's alleged injury with the police report.  (Exhibit "D," "E," pages 185-187.)  This Court finds that any further cross-examination of Detective Hills would have been cumulative in light of the other testimony presented at trial on cross-examination.  State v. Riechmann, 777 So.2d 342 (Fla. 2000); Valle v. State, 705 So.2d 1331, 1334-35 (Fla. 1997); Provenzano v. Dugger, 561 So.2d 541, 545-46 (Fla. 1990).

19

> Accordingly, this Court finds that Defendant
> has failed to establish error by counsel or
> that there was a reasonable probability that
> the outcome of the trial would have been
> different.

Ex. D at 61.

This claim was rejected on the merits by the state courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. Thus, Petitioner must establish that no competent

attorney would have taken the action that counsel, here, chose. United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

The trial transcript reflects that defense counsel, during the cross-examination of Detective Hills (the arresting officer), asked:  "You did not -- at any point you did not examine him physically to see if he had any scars or cuts on him, isn't that correct?" Tr. at 185.  Detective Hills responded:  "I think he did have a cut on him somewhere."  Id.  Detective Hills clarified his response for defense counsel, stating:  "Now that you said something about it, I remember when we handcuffed him with his arms behind his back and somewhere he did have a cut on him."  Id. Detective Hills did not remember where the cut was located.  Id. This testimony was important because there was testimony that the suspect in the burglary may have cut himself breaking into the house.[7]  Id. at 121, 139, 143.  Counsel then inquired as to why Detective Hills did not record in the police report that he had observed a cut on Petitioner Ward.  Id. at 185-86.  Detective Hills

---

[7] While the victim testified that the intruder's blood was in the kitchen area (Tr. at 121), the evidence technician stated "[t]here was [sic] a few drops of blood but I don't remember a large amount."  Id. at 139, 143.  Further, the evidence technician stated that it is possible that the intruder may have cut himself. Id. at 139.  No blood samples were taken since there was not a substantial amount of blood at the scene.  Id. at 143.

responded that he did not "see where it was important to write it down."  Id. at 186.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that counsel's error actually had an adverse effect on the defense.  James McDade, the victim of the burglary, testified that his home had been burglarized, that he did not know Petitioner Ward and that he had never invited Petitioner into his home.  Id. at 116, 120.  Phillip C. Talamo, an evidence technician with the Jacksonville Sheriff's Office, testified that he removed finger and palm prints near the burglar's point of entry.  Id. at 129-32.  Thomas Howell, a latent print examiner with the Jacksonville Sheriff's Office, testified that he compared the finger and palm prints taken from the burglary scene to those of Petitioner Ward and determined that they matched.  Id. at 153-56.  Lastly, Detective Hills testified that Petitioner denied burglarizing the victim's home or ever being in the home and that Petitioner did not know how his fingerprints were found in the home.  Id. at 182-84.  Thus, it was the fingerprint evidence that placed Petitioner Ward at the scene of the burglary.  Here, Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided.  This ineffectiveness claim is without merit.  See Response at 17-19.

22

## C. Ground Three

Petitioner claims he was denied due process when the trial court allowed Petitioner to be fingerprinted just prior to the start of the trial. Petitioner states that he raised this claim as ground three in his second Rule 3.850 motion and also raised the claim in his initial brief on direct appeal. See Amended Petition at 8. It is clear that he did not raise the claim in his second Rule 3.850 motion. However, since the Respondents did not provide the briefs on direct appeal as part of the Appendix, this Court will assume that Petitioner sufficiently raised the claim on direct appeal.

Specifically, Petitioner contends that his fingerprints were used by the State as fingerprints found in the victim's house after the burglary because the original prints were lost. Memorandum of Law at 23. This claim is rebutted by the testimony of the State's witnesses.

The State filed a Motion to Compel Fingerprint Specimens on April 11, 2000, in which they requested that the court order the defendant to appear before Officer Tom Howell of the Jacksonville Sheriff's Office to provide any and all specimens of his fingerprints as deemed necessary by the officer. Ex. B at 114. As grounds for the motion, the State stated "[l]atents prints were taken from the crime scene and need to be compared to this

Defendant's known prints." Id.   The court granted the motion on April 11, 2000.  Id. at 115; Tr. at 81-84.

At the trial, Phillip Talamo (the police evidence technician with the Jacksonville Sheriff's Office) testified that he lifted fingerprints from the glass of the victim's window and from the kitchen sink.  Tr. at 126, 131.  He identified a State's exhibit as the fingerprints that he had lifted off of a piece of glass on the day of the burglary.  Id. at 131-33.  He also testified that another State's exhibit was a partial palm print that he had lifted from the victim's sink on the day of the burglary.  Id. at 133, 135.

Thomas Howell (the latent print examiner for the Jacksonville Sheriff's Office) supported Talamo's testimony.  Howell told the jury that he had previously examined the State's exhibits one, two and three and had marked the print cards with his initials.  Id. at 152-54.  Howell compared the prints taken from the scene with those of Petitioner and determined that the prints from the burglary scene matched Petitioner's.  Id. at 154-56.  Howell also stated that State's exhibit four were fingerprints that Howell had taken from Petitioner Ward on the day of Howell's testimony and on the prior day.  Id. at 154, 157.  He testified that the recently taken prints of Petitioner were not a part of his original evaluation. Id. at 157.

Outside the presence of the jury, the prosecutor explained that Petitioner's fingerprints had been recently taken and used as an exhibit so that the jury would not hear that Howell had compared Petitioner's fingerprints using jail records. Id. at 162. This process was utilized so that Petitioner would not be unduly prejudiced by having the jury learn that he had a prior record. Id. at 162-64. The prints that Howell took of Petitioner on the day of the trial were then compared to the prints from the jail record to ensure the accuracy of Howell's identification. Id. at 169.

Thus, as evidenced by the record, the fingerprints taken from Petitioner on the day of the trial were not substituted for latent prints taken from the burglary scene. Petitioner's claim is without merit, and the trial court did not err in allowing the prints to be taken.

### D. Ground Four

Petitioner claims counsel was ineffective for failure to move to dismiss the charge based on Florida's speedy trial rule. Petitioner raised this claim in his second Rule 3.850 motion (as ground four). The trial court adjudicated the claim on the merits, and the appellate court affirmed. The trial court, in denying the claim, identified the two-pronged test established in Strickland and stated, in pertinent part:

> In ground four, Defendant asserts that counsel rendered ineffective assistance by failing to file a Motion for Discharge based upon the running of speedy trial. This Court notes that Defendant filed his own Motion to Dismiss the charges based upon an expiration of the speedy trial time limits on April 6, 2000, the Court denied the Motion based upon defense counsel['s] request for continuance after the case had been set for trial. (Exhibit "F.") Therefore, this Court finds that it was unnecessary for counsel to file a Motion for Discharge based upon the expiration of speedy trial since a previous counsel waived Defendant's speedy trial right by requesting a continuance after the case had been set for trial. <u>Fonte v. State</u>, 515 So.2d 1036 (Fla. 3d DCA 1987); <u>State v. Kruger</u>, 615 So.2d 757 (Fla. 4th DCA 1993). Accordingly, this Court finds that Defendant has failed to establish error by counsel or prejudice to his case.

Ex. D at 62.

This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. <u>See</u> Response at 26-29.

The record reflects that, despite the fact that Petitioner was initially represented by the Public Defender's Office, he filed

numerous *pro se* motions to dismiss, including a notice and a motion to dismiss based on the speedy trial rule. Ex. B at 61, 69-74. On March 8, 2000, Petitioner's trial counsel (Mr. Brannon) filed a Motion to Adopt Defendant's *Pro Se* Motions to Dismiss, noting that among the *pro se* motions was a motion to dismiss pursuant to Rule 3.191(a), Florida Rules of Criminal Procedure. Ex. B at 84. The trial judge heard argument from counsel concerning the speedy trial issue and then denied the motion to dismiss as adopted by Mr. Brannon. <u>Id</u>. at 243-51. The trial judge explained to Petitioner that his previous counsel had moved to continue the trial and therefore waived the right to speedy trial. <u>Id</u>. at 251. Specifically, the trial judge instructed Petitioner:

> Mr. Ward, let me tell you something, your case would have been long disposed of but I have to keep appointing new attorneys for you. You don't get along with any attorneys.
>
> . . . .
>
> This is your third one, this is your last one. As soon as Mr. Brannon is ready to set it for trial I'll be more than glad to set it for trial.
>
> . . . .
>
> Listen to me, in order to assist you, to get an attorney that you felt you could work with I relieved Mr. Taylor, appointed Mr. Hardee, private attorney in Jacksonville to represent you. And at that time he moved for continuance because he obviously couldn't be prepared. As I told you before when I had to allow -- grant your motion to permit the discharge of your Public Defender at that time, when I appointed Mr. Hardee. I told you

> no way he was going to be ready next week for
> trial.  And –

Id. at 249-50.

On April 6, 2000, Petitioner filed another *pro se* motion based on the speedy trial issue.  Id. at 95.  On April 10, 2000, the trial judge denied the motion for speedy trial, stating "[t]he Defendant's attorney, Jim Hardee, has previously moved for a continuance when the case had been set for trial."  Id. at 101.

As the record reflects, Mr. Brannon and Petitioner presented the speedy trial issue to the trial judge.  Therefore, counsel's performance was not deficient.  Further, Petitioner has not shown resulting prejudice.  The trial judge heard and considered the speedy trial issue and denied the motions.  The ineffectiveness claim is without merit.

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit.  Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 21st day of November, 2005.

TIMOTHY J. CORRIGAN
United States District Judge

sc 11/10
c:
Willie Andre Ward
Ass't Attorney General (Armstrong)

29